JOSHUA D. BALL *vs.* ELIZABETH J. WYETH.

An agreement by a creditor to extend the right to redeem land which is mortgaged to him to secure his debt, and not to foreclose the mortgage for a specified time, does not extend the personal liability of his debtor beyond the time at which it would otherwise cease by the statute of limitations.

If a lease of buildings contains a written clause providing that they "are to be kept in repair and maintained in good condition by the lessee," and printed clauses providing that at the end of the term the lessee will quit and deliver up the premises "in as good order and condition, (reasonable use and wearing thereof, fire and other unavoidable casualties, excepted,) as the same now are or may be put into" by the lessor, and that the lessee shall keep the buildings insured against loss by fire, in a specified sum payable to the lessor, the lessee is not liable to repair injuries which occur through ordinary wear, or fire or other unavoidable casualties.

CONTRACT brought on the 18th of December 1862 by the administrator of the estate within this commonwealth of Leonard Jarvis, against the executrix of the estate of Nathaniel J. Wyeth, to recover the sum of $15,000, and interest, for money advanced by the plaintiff's intestate to the defendant's testator, and also to recover upon the covenants of a lease.

At the trial in this court, before the chief justice, it appeared that on the 20th of August 1851 Leonard Jarvis, of Baltimore, for the accommodation of Nathaniel J. Wyeth, opened a continuous credit for six thousand pounds sterling with George Peabody of London, which Wyeth used to the full amount thereof, having given to Jarvis a mortgage on certain parcels of real estate for security. Subsequently, on the 17th of August 1852, a new arrangement was made between Jarvis, Wyeth, and another person who was interested in the matter with Wyeth, by which the latter, to furnish security for his portion of the sum received under the letter of credit, executed to Jarvis a deed of the "Assabet Estate," absolute in form, for the consideration of fifteen thousand dollars. This estate consisted of land in Sudbury, with an ice-house thereon, and machinery and apparatus for cutting, transporting and storing ice. On the same day, Jarvis and Wyeth executed an indenture, by which Jarvis leased the same property to Wyeth for three years, for the rent of nine hundred dollars a year, payable semi-annually

Certain provisions of this indenture are recited in the opinion. On the same day, Jarvis and Wyeth executed another indenture, reciting the above deed and lease, and providing that the same were made on condition that, if Wyeth should observe the covenants of the lease, Jarvis should convey to him the said property at any time within three years, upon payment of fifteen thousand dollars, and that if Wyeth should fail to observe the said covenants, or to pay the said sum within the specified time, Jarvis should have the right to sell the property, upon terms and conditions similar to those usually incorporated into a mortgage with power of sale. Subsequently the lease was extended, by a written memorandum upon the back of it, until January 1st 1862, and the following agreement (marked " M ") was executed by Jarvis upon the other indenture, on the 13th of November 1854 :

" The lease mentioned in this agreement having been, by memorandum upon the back of the lease, extended to seven years after the 1st of January 1855, the said Leonard Jarvis agrees also to extend the right to redeem the land herein mentioned, upon the payment of the sum of fifteen thousand dollars at any time within said term of seven years, and not to foreclose within said term."

Jarvis died in 1855, and on the 12th of August 1862 the plaintiff was appointed administrator of his estate within this commonwealth. Wyeth died in 1856, and the defendant was appointed executrix of his estate on the 14th of October in that year, and gave bond and notice of her appointment according to law. She has received the rents of the Assabet Estate since Wyeth's death, and paid to the plaintiff the semi-annual payments provided for in the lease, to April 15th 1859.

Upon the foregoing facts, the chief justice directed a verdict for the plaintiff for $15,000, and interest thereon from April 15th 1859, and reported the case for the determination of the whole court. And it was provided that if the court should be of opinion that said sum was not a debt due from Wyeth's estate, or that the same was barred by the statute of limitations, then the verdict should be set aside, and the case stand for trial upon the

other counts in the declaration, under such instructions as the court should give.

*H. W. Paine & C. Smith,* for the defendant.

*E. O. Hinkley* (of Maryland) *& J. D. Ball,* for the plaintiff.

HOAR, J. Much learning and labor have been expended by counsel in the argument of this cause, upon the question whether, when the plaintiff's intestate furnished the defendant's testator with a letter of credit, and afterward paid the sum of $15,000 to protect it, taking a mortgage security therefor, the effect of the whole contract was that he should rely exclusively upon the mortgage for his indemnity ; or whether the defendant's testator incurred beside a personal liability for the amount advanced, upon which this action could be maintained. We have not found it necessary to come to any conclusion upon this point; because, assuming that the plaintiff's view of it is the right one, we are all of opinion that any claim upon it is barred by the statute of limitations.

The defendant's testator died in 1856, and the defendant was appointed executrix and gave bond on the 14th of October 1856 ; and it is agreed that due notice was given of her having been qualified as executrix. If, then, the mortgage were not a substitute for the personal obligation, still the debt was contracted in 1852. No rent or interest has been paid since 1859 ; and the only evidence to show that the cause of action accrued within a period which would avoid the bar of the statute of limitations is the agreement marked " M ". At the time when that agreement was made, November 13th 1854, according to the theory of the plaintiff, Mr. Wyeth owed Mr. Jarvis $15,000 ; Mr. Jarvis had a conveyance in the nature of a mortgage to secure the payment of that sum ; and had leased the mortgaged premises to Mr. Wyeth, at a rent equal to the interest on the debt, for a term which would have expired on the 15th of October 1855, but had been extended until January 1st 1862. We can find in the paper marked " M " nothing which would in legal effect modify or change the personal obligation of a debtor to pay money. The mortgage and the evidence of debt are usually separate instruments, and afford to the mortgagee

independent and concurrent remedies. The mortgage may be wholly discharged or released without affecting the personal liability of the mortgagor; and the statute of limitations, or a discharge in bankruptcy or insolvency, which terminate the personal liability, will not operate to extinguish the mortgage security. The creditor, by this paper, merely agreed to modify his right to avail himself of his security by sale or foreclosure. It in terms only applies to his rights under the mortgage, and we cannot extend it to create any further liability of the debtor. The right to sue the defendant was therefore barred in two years from the time of notice given of her appointment.

This decision disposes of the principal question in the case; and the remaining one relates only to the liability of the defendant upon the covenants in the lease. The right of the plaintiff to recover the rent from October 15th 1861 to January 1st 1862, which became due within a year before the commencement of this action, is conceded. Gen. Sts. c. 97, § 9. But the plaintiff claims in addition that he can recover on the covenant in the lease to keep the premises in repair.

In one clause of the lease it is provided that "all the buildings, machinery, fixtures and apparatus are to be kept in repair and maintained in good condition by the said lessee." In another clause the lessee covenants that he will quit and deliver up the premises at the end of the term, "in as good order and condition, (reasonable use and wearing thereof, fire and other unavoidable casualties, excepted,) as the same now are or may be put into by the said lessor." In a third clause the lessee covenants to keep the buildings insured against loss by fire in the sum of five thousand dollars, payable to the lessor in case of loss. The clause first recited is inserted in writing, while the others were contained in the printed form of lease which was used by the parties. And where clauses in an instrument are inconsistent, it is the usual rule of construction that such as are written will control those that are printed, on the presumption that the latter were left by inadvertence. But if they can all be retained and interpreted together, none are to be rejected.

To support the plaintiff's construction, the limitation in the

second clause, which excepts reasonable use and wear, fire and other unavoidable casualties, must be rejected as wholly without force or application; and the lessee is to be held, in case of the destruction of the property by fire, to replace it, although he is also to keep it insured at his own expense, for the benefit of the lessor.

We think the more just conclusion is that the exception was intended to qualify both of the covenants, to repair and to deliver up the premises; and that the object of the written clause was to stipulate that the lessee should do his own repairs, and not call upon the lessor to keep the estate in tenantable condition.

It will follow that the plaintiff can only recover for a failure to keep the property in repair, so far as it is caused by something else than ordinary wear and unavoidable casualties; and, according to the reservation in the report, the verdict must be set aside, and the case stand for trial under rulings in conformity with the foregoing opinion.